**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

No. 24-1390

ERIC COOMER, Ph.D.

v.

MAKE YOUR LIFE EPIC, LLC, et al.

_____

JOSEPH OLTMANN,
*Nonparty-Appellant*

_____

**NONPARTY-APPELLANT'S RESPONSE TO APPELLEE'S**
**MOTION FOR EXPEDITED APPEAL AND MOTION TO EXTEND**
**TIME TO FILE BRIEF PURSUANT TO TENTH CIRCUIT RULE 27.5**

_____

Nonparty-Appellant Joseph Oltmann, through undersigned counsel, respectfully submits his Response objecting to Appellee's Motion for Expedited Appeal and, instead, moves to Extend Time to File Brief Pursuant to Tenth Circuit Rule 27.5, stating as follows:

**CERTIFICATE OF CONFERRAL**

Today, the Court issued a deadline of 12/4/24 for filing the Opening Brief. In looking at his own schedule including holiday obligations and plans while drafting this Response, undersigned counsel determined that, in addition to objecting to expedited briefing, it was necessary to request an extension of the newly set deadline as more fully set forth below.

Pursuant to Tenth Circuit Rule 27.1, counsel for Appellant has NOT effectively conferred with counsel for Appellee or for Defendants in the underlying trial matter. Given his request for expedited briefing, Appellee undoubtedly opposes the extension of time. Undersigned counsel has sent a belated email to all counsel and will supplement this Certificate with the positions of all counsel when received.

I.      SUMMARY

1.   This is not an interlocutory appeal.  Rather, it is an appeal from an order of contempt.
Nonparties are not required to await final judgment to appeal a civil contempt order. *Federal
Trade Commission v. Zurixx*, 26 F.4th 1172, 1177 (10th Cir. 2022) (*citing U.S. Catholic Conf. v.
Abortion Rights Mobilization, Inc*., 487 U.S. 72, 77 (1988)) (*Zurixx I*).

2.   Nonparty Oltmann did not "flee" a federal district court to avoid giving court-ordered
testimony.  Rather, Oltmann once again reasserted the "newsperson" privilege, which legally
protects him from divulging a confidential source.  He maintains that privilege by asserting it
through all stages of litigation up to and including relief provided by state and federal appellate
courts.  Attorneys for Plaintiff-Appellee are aware of Oltmann's standing objection as it has been
raised in collateral matters in which they are also involved.  *See Eric Coomer v. Donald J. Trump
for President, Inc*., et al., No. 2020-CV-034319 (Denver Dist. Ct.) and *Eric Coomer v. Joseph
Oltmann*, et. al., No.2021CA1481 (Colo. App.).

3.   Whether Plaintiff-Appellee (hereinafter referred to as "Coomer") likes it or not, the
collateral matters identified above have been stayed pending determinations by the Supreme
Court of Colorado.  In an effort to circumvent that stay, Coomer has tried to relitigate the same
issue of the "newsperson" privilege in the instant case by dragging Oltmann in as a nonparty
witness.  These tactics against Oltmann are repetitive, time consuming, and abusive.

4.   Attorney Mark Sares appeared in the underlying matter on Oltmann's behalf in a
limited role to defend a single deposition as Oltmann is a nonparty.

5.   Coomer's attorneys and Mr. Sares left the June 6, 2024, deposition to notify Judge
Starnella that Oltmann would not divulge his confidential source.  Oltmann, who was not in the
judge's chambers, notified Mr. Sares by phone that he would not violate the "newsperson"

privilege and left.  In subsequent briefing,  Mr. Sares attached the deposition transcript of

Oltmann's assertion of the "newsperson" privilege—providing Judge Starnella with even more

context as to why Oltmann left.  *See* Appellant's Exhibit 2.

6.   Additionally, Oltmann provided an affidavit detailing his history as a journalist

despite Coomer's attorneys' efforts to reduce him to a mere "podcaster."  *See Appellant's*

Exhibit 1.  Though Oltmann is primarily known by the public as a very successful CEO,

technologist, and system architect expert, he owns numerous companies, which extend into

media and journalistic endeavors.  *Id.*

7.   Notwithstanding the above, Judge Martinez contends that Magistrate Judge

Starnella's Recommendation for Contempt operated as a blanket waiver – even on issues

Coomer failed to brief on the record or otherwise.  This is the heart of Oltmann's appeal.  What

if Coomer sought discovery arguably covered by the attorney-client privilege or attorney work-

product privilege?  If the matter was objected to during the deposition, and not raised in

subsequent briefing by Coomer, would this court necessarily conclude that the "waiver

provision" contained in its Recommendation also operates as a waiver of the attorney-client

privilege?

8.   More troubling, however, is that Judge Martinez *sua sponte* waived an evidentiary

hearing on objections Oltmann *did* make in response to Coomer's arguments as "immaterial."

This occurred even though the express language in Judge Starnella's Recommendation and Order

guaranteed Oltmann "**… a day certain to show cause why [he] should not be adjudged in

contempt by reason of the facts so certified.**"  Appellee's Ex. A, pg. 21.  In other words,

Oltmann is being damned for not exercising sufficient enough procedural adherence to a

boilerplate provision in Judge Starnella's Recommendation, yet Judge Martinez unilaterally waived portions of that same document.

9.  Judge Martinez determined that the filing of the Notice of Appeal on October 4, 2024, divested the court of jurisdiction.

10.  Oltmann has not delayed this proceeding or any other related proceeding.  He has been responsive to all matters, from written discovery to depositions, that fall *outside* of the "newsperson" privilege.  Coomer has deployed a staggering amount of lawfare.  With no apparent lack of financial resources, he is litigating five separate lawsuits against those that have reported on his alleged corruption.  *See* Appellee's Motion, pg. 11.  This is self-evident when simply looking at the sheer number of pages (1459) in the exhibit attached to Coomer's motion. Coomer has sued attorneys that have filed well pled complaints, news organizations, and the former President of the United States, Donald J. Trump.

## II.        RELEVANT PROCEDURAL BACKGROUND

11.  This case, like the collateral *Coomer v. Donald J. Trump for President, Inc. et. al.* lawsuit*,* arises from Oltmann's truthful claims; namely, that Oltmann audibly heard someone identified as "Eric" from "Dominion" on a conference call facilitated by an Antifa whistleblower.  The whistleblower informed Oltmann that other Antifa activists would be on the conference call sharing strategies, and that some were posing as journalists.  Oltmann could ascertain that the voice of "Eric" belonged to an adult male.

12.  Within weeks of that same conference call, Oltmann would come across a televised media appearance with Eric Coomer, identified as the Director of Strategy and Security for Dominion Voting Systems.  Oltmann noted the similarity of the voice of Eric Coomer making a media appearance to the "Eric" from "Dominion" on the conference call.

13.  Before putting Oltmann on the Antifa conference call, the whistleblower had two conditions.  First, that Oltmann not record the call.  Second, that Oltmann never reveal his source for fear that the whistleblower could be tracked, threatened and/or killed.

14.  The whistleblower's concerns were well-founded.  During Oltmann's sworn testimony before Judge Marie Avery Moses, Coomer's attorneys tried to breach the "newsperson" privilege.  Oltmann's testimony was uncontroverted on the following facts:

    a.  Within 48 hours of Oltmann disclosing his findings on Eric Coomer, Oltmann and his wife were threatened in a grocery store by an unidentified male stating "we're watching you."  *See* Appellee's Exhibit A, pg. 92.

    b.  Within two weeks, the threats became so severe that Oltmann contacted both the Sheriff and FBI, and had to hire a personal security detail, as well as a 24/7 security detail for his adult children to escort them to and from university classes.  *Id.*

    c.  That an unidentified individual was observed surveilling his business office with binoculars; assailants with guns came to his personal residence; and the FBI was called to his home with a hazmat team after a letter containing "white powder" was delivered.  *Id.* at pg. 94.

    d.  Ongoing threats continue.  *See* Appellant's Exhibit 2.

15.  Another point of contention is that Coomer wants Oltmann to provide how he was able to take screen shots of social media posts Coomer made on his "private" Facebook account.  Many such posts corroborate Coomer's ties to Antifa.  Coomer does not dispute in the instant motion whether those pro-Antifa posts are his.  *See* Appellee's Motion, pg. 3, paragraph 6.  Oltmann takes issue with the characterization that Coomer had any expectation of privacy.  Upon

information and belief, during the relevant November 2020 time frame, Coomer had hundreds of "friends" on Facebook that could take screenshots of what he *publicly* posted regarding his views on Antifa, the Antifa manifesto, and his hatred of Trump and/or the police. There was no unauthorized access to Coomer's "private" Facebook account.

16. In paragraph 8 of his motion, Coomer goes to great lengths to cherry pick Judge Moses's findings concerning Oltmann's credibility. It is worth mentioning that pretrial hearings are just that—pretrial. Wisdom and strategy dictate how and when a party will show their full hand. Suffice it to say, Coomer is locked into his version of events and his credibility and veracity will be challenged at trial. Irrespective of Coomer's saber rattling, Judge Moses understands that ultimately Oltmann's "credibility is an issue that will need to be resolved by the jury." *See* Appellee's Exhibit D, pg. 50. We agree.

17. The issue of waiver and the viability of the "newsperson" privilege are the substantive issues needing to be addressed and will require significant research and extensive briefing.

18. Judge Martinez would not make a finding that Oltmann's appeal was frivolous. *See* Appellee's Exhibit C, pgs. 45-46.

19. Judge Martinez also ruled Oltmann would be "irreparably injured absent a stay." *Id.* pg. 46. Such injury is likewise guaranteed if Oltmann is required to rush his Opening Brief preparation.

### III. ARGUMENT

#### A. Legal Standard

20. The appellant's brief and appendix must be filed within forty days after the date the district court clerk notifies the parties and the circuit clerk that the record is complete for

purposes of appeal. 10th Cir. R. 31.1(A)(1).  Under the prescribed rule, Oltmann was notified

today that he is entitled to a briefing period deadline that expires December 4, 2024, unless the

clerk decides to expedite or extend that briefing period.

**B. Subject to review by the Court, the Clerk is authorized to expedite cases or *extend* deadlines.**

21. On its own or a party's motion, the Court may expedite its decision or extend a

briefing deadline for good cause shown.  It may suspend any provision of the Federal Rules of

Appellate Procedure in a particular case and order proceedings as it directs. Fed. R. App. P. 2(A).

**C. Good Cause Does Not Exist to Expedite Resolution.  Rather, Good Cause Exists to Extend the Briefing Period**

22.  This case presents an opportunity for the Tenth Circuit to finally "recalibrate" the

"newsperson" privilege.  But the issue of waiver must be addressed.  Oltmann has invoked the

reporter's shield law of Colorado in both state and federal cases.  The state case has been stayed.

Nonparty Oltmann's representation by Mark Sares for a single deposition has created significant

legal stress, as the scope of that representation did not include matters related to a finding of

contempt, or a protracted appeal.  From the moment a contempt finding was made, Oltmann has

made diligent efforts to find an attorney that did not have such restrictions.  The stress is

compounded as undersigned counsel was onboarded the first week of October, 2024, to pursue

Oltmann's rights on appeal.

23.  Undersigned counsel accepted this case on short notice due to the urgency of

determining whether Oltmann is in fact protected by the "newsperson" privilege before he is

subjected to jail and additional $1000/day fines.  Undersigned counsel unexpectedly became a

widower last year and has only recently reenergized his practice with a new office and mostly

new staff.  Undersigned counsel is the only attorney in the Firm with appellate experience.

Counsel's schedule leading to the newly set current deadline of 12/4/24 is packed with deadlines,

hearings and even a jury trial scheduled in the week of 12/9 with pre-trial preparation and

deadlines the week prior when Oltmann's Opening Brief is currently due. The week prior to the

current deadline is the Thanksgiving holiday and undersigned counsel had planned to be out of

town with family then. The week following the jury trial has two hearings on matters that have

been pending for over a year and the week following that brings the Christmas and New Year's

holidays. Undersigned counsel is aggressively seeking additional attorneys to add to the Firm

but is, at this time, still carrying the load. As a result, Appellant respectfully requests an

enlarged Opening Brief deadline to January 6, 2025.

24. Oltmann does not dispute his noncompliance regarding disclosure of a confidential

source. His fate, whether accruing a daily $1,000 or being incarcerated for his determination to

protect a source, depends on whether the 10th Circuit finds that the privilege applies. But make

no mistake, his actions are not rooted in thumbing his nose at any court. They are rooted in

safeguarding the life of a confidential source he promised to protect.

25. What Coomer construes as vexatious conduct is Oltmann following well-settled law.

A district court's ruling on a subpoena's validity is not enforceable unless and until the

subpoenaed party defies an enforcement order and is cited for contempt. Under this general rule,

it is only after entry of contempt that the underlying discovery dispute becomes ripe for appellate

review." *Kemp v. Gay*, 947 F.2d 1493, 1495 (D.C. Cir. 1991) (citations and quotation marks

omitted). Courts routinely have applied this rule in this precise context: where a non-party in a

civil case seeks to challenge the denial of its motion to quash a subpoena on First Amendment

grounds. *See Perry v. Schwarzenegger*, 602 F.3d 976, 979 (9th Cir. 2010); *In re Motor Fuel*

*Temperature Sales Pracs. Litig.,* 641 F.3d 470, 485 (10th Cir. 2011); *Ohio A. Philip Randolph*

*Inst. v. Larose*, 761 F. App'x 506, 510–12 (6th Cir. 2019).  The Court in each of these cases refused to exercise jurisdiction over an interlocutory appeal challenging the denial of a motion to quash and insisted that the proper way for the non-party to vindicate its First Amendment rights was to violate the order and appeal an ensuing contempt citation.  Likewise, it is all but necessary to get guidance from this Court on the contours of the "newsperson" privilege here.

26. Regardless of the lower court's belief that a blanket form waiver took place, the heart of Oltmann's appeal is that he has not waived the "newsperson" privilege.  While Coomer's attorneys notified the magistrate judge that Oltmann left the June 6, 2024, deposition, they did not alert the judge as to the reason why.  They put the cart before the horse and focused on an award of attorney's fees and costs, the per diem sanction, but chose not to brief the "newsperson" privilege.  In an adversarial process, it is standard practice to respond to the arguments being presented to the judge.  To construe waiver in the face of Coomer's silence, when the record is replete with discussions over the "newsperson" privilege would be the epitome of injustice.

27.  Finally, Oltmann agrees that the procedural posture of the Denver District Court lawsuit "mirrors" the underlying federal case with respect to his compliance in divulging a protected source.  Nonetheless, the Colorado state case was stayed and Oltmann was provided relief for now.  The Colorado Supreme Court's management of its own docket should not be construed as a dilatory by Oltmann.  No matter how frustrated Coomer may be by the Court's stay in a collateral matter—Oltmann has no control of when the Colorado Supreme Court will rule.

### IV.        CONCLUSION

WHEREFORE, Nonparty Oltmann respectfully requests that the Court deny Appellee's Motion for Expedited Appeal Pursuant to Tenth Circuit Rule 27.5 and that, instead, the briefing

period be extended from December 4, 2024, to January 6, 2025, to allow new counsel to get up to speed on this case that has been developed over a nearly 4-year period, provide proper briefing, and still manage his other near-term obligations.

      Respectfully submitted this 25th day of October, 2024.

 

*/s/ Randy B. Corporon*
Law Offices of Randy B. Corporon, P.C.
5445 DTC Parkway, Suite 825
Greenwood Village, CO 80111
**ATTORNEY FOR NON-PARTY JOSEPH OLTMANN**

## CERTIFICATE OF SERVICE

I certify that on this 25th day of October, 2024, a true and correct copy of the *Nonparty-Appellant's Response to Appellee's Motion for Expedited Appeal and Motion to Extend Time to File Brief Pursuant to Tenth Circuit Rule 27.5* was filed with the Court using the CM/ECF Filing System which will send notification of such filing to:

| | |
|---|---|
| Brad Kloewer, Esquire<br>Charlie Cain, Esquire<br>Steve Skarnulis, Esquire<br>Cain and Skarnulis, PPLC<br>P.O. Box 1064<br>Salida, Colorado 81201<br>Telephone: (719) 530-3011<br>Attorneys for Plaintiff | (X) by CM/ECF System<br>(  ) by First Class U.S. Mail<br>( X )  by designated email to: bkloewer@cstrial.com<br>ccain@cstrial.com |
| Thomas J. Rogers, III, Esquire<br>David M. Beller, Esquire<br>RechtKornfeld PC<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>Telephone: (303) 573-1900<br>Attorneys for Plaintiff | (X) by CM/ECF System<br>(  ) by First Class U.S. Mail<br>( X )  by designated email to: trey@rklawpc.com<br>david@rklawpc.com<br>(  ) By Facsimile Transmission to _____ |
| Thomas Baker Quinn, Esquire<br>Melissa Ann Wiese, Esquire<br>John Rodger Mann, Esquire<br>Gordon Rees Scully Mansukhani LLP<br>555 17th Street, Suite 3400<br>Denver, CO 80202<br>303-534-5160<br>Attorneys for Make Your Life Epic LLC, Reopen American LLC, and Clayton Thomas Clark | (X) by CM/ECF System<br>(  ) by First Class U.S. Mail<br>( X )  by designated email to tquinn@grsm.com<br>mwiese@grsm.com<br>jmann@grsm.com<br>(  ) By Facsimile Transmission to _____ |

Original signature on file at the Law Office of Randy B. Corporon, P.C.

/s/ Lacey Kalkwarf
Lacey Kalkwarf, Paralegal