No. 24-1390

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

ERIC COOMER, PH.D.,
Plaintiff-Appellee

vs.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW, et al.,
Defendants

---

JOSEPH OLTMANN,
Nonparty-Appellant

---

On Appeal from the United States District Court for the District of Colorado
Honorable William J. Martinez
No. 1:21-cv-03440-WJM-KAS

---

## APPELLEE'S ANSWER BRIEF

---

**ORAL ARGUMENT
NOT REQUESTED**

Charles J. Cain
ccain@cstrial.com
Bradley A. Kloewer
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011—Facsimile
**ATTORNEYS FOR APPELLEE**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................i

INDEX OF AUTHORITIES ............................................................................... iii

STATEMENT REGARDING PRIOR OR RELATED APPEALS ....................................1

STATEMENT REGARING ORAL ARGUMENT ..........................................................1

STATEMENT OF JURISDICTION ..................................................................2

STATEMENT OF THE CASE ..........................................................................3

I.     Introduction ..................................................................................................3

II.    Procedural History ....................................................................................6

ARGUMENT..............................................................................................19

I.     The Firm Waiver Rule Precludes the Court from Hearing this Appeal .................19

       A.    Standard of review and preservation of appeal ...........................................19

       B.    The firm waiver rule applies here...............................................................20

II.    The District Court Did Not Err in Finding That Oltmann waived the Reporter's Privilege .................................................................................21

       A.    Standard of review and preservation of appeal ...........................................21

       B.    Oltmann waived any potential assertion of the Reporter's Privilege ..........22

       C.    The Magistrate Judge's findings were not "ambiguous"..............................26

III.   The Reporter's Privilege Does Not Apply................................................27

IV.   Oltmann Was Not Denied an Opportunity to be Heard ...........................................31

     A.     Standard of review and preservation of appeal ...........................................31

     B.     Oltmann had a hearing, and waived any right to a second .........................31

V.    There Was No Plain Error ......................................................................................35

CONCLUSION ......................................................................................................................36

CERTIFICATE OF COMPLIANCE F.R.C.P. 32(g) .......................................................37

CERTIFICATE OF COMPLIANCE ..................................................................................37

CERTIFICATE OF SERVICE ............................................................................................38

# INDEX OF AUTHORITIES

**CASES**                                                       **Page**

*Churchey v. Adolph Coors Co.,*
759 P.2d 1336 (Colo. 1988)......................................................................29

*Coomer v. Donald J. Trump for President, Inc. et. al.,*
552 P.3d 562 (Colo. App. 2024)..........................................................1, 33

*Coomer v. Giuliani,*
2024 WL 4848999 (Colo. App. 2024).......................................................1

*Coomer v. Lindell et. al.,*
1:22-cv-01129-NYW-SBP
United States District Court for Colorado ......................... 5, 8, 24-25, 36

*Coomer v. Make Your Life Epic LLC d/b/a ThriveTime Show et. al.,*
98 F.4th 1320 (10th Cir. 2024) ..................................................................1

*Coomer v. Oltmann et. al.,*
2021CA1481 (Colo. App., Feb. 22, 2022) ................................................1

*Coomer v. Salem Media of Colorado, Inc. et. al.,*
--- P.3d ---, 2025 WL 209253 (Colo. App. 2025)................................1, 5

*FTC v. Kuykendall,*
371 F.3d 745 (10th Cir. 2004) ..........................................................19, 21

*FTC v. Zurixx, LLC,*
2023 WL 2733500, at *6 (10th Cir. 2023) .........................................2, 20

*Gordon v. Boyles,*
9 P.3d 1106 (Colo. 2000)............................................................24, 28, 29

*Henderson v. People,*
879 P.2d 383 (Colo. 1994).......................................................................29

*Hunter v. HCA,*
812 Fed. App'x. 774 (10th Cir. 2020) ...............................................2, 20

*Key Energy Resources, Inc. v. Merrill,*
230 F.3d 1197 (10th Cir. 2000) ...............................................................34

*Lincoln Nat'l Life Ins. Co. v. Marchiol,*
    2013 WL 673990, at *2 (D. Colo. Feb. 22, 2013) ................................................31

*Luo v. Wang,*
    2023 WL 8613862, at *4 (10th Cir. 2023) ...........................................................31

*Morales Fernandez v. INS,*
    418 F.3d 1116 (10th Cir. 2005) ........................................................................2, 20

*Scalia v. Paragon Contractors Corp.,*
    957 F.3d 1156 (10th Cir. 2020) ......................................................................19, 21

*Silva v. Coast to Coast Fin. Sol. Inc.,*
    2020 WL 9432701, at *3 (D. Colo. Feb. 10, 2020) ..............................................31

*Theede v. U.S. Dep't of Labor,*
    172 F.3d 1262 (10th Cir. 1999) ............................................................................34

*U.S. v. One Parcel of Real Prop.,*
    73 F.3d 1057 (10th Cir. 1996) .........................................................................2, 20

*Wyoming v. Livingston,*
    443 F.3d 1211 (10th Cir. 2006) ............................................................................31

## STATUTES

C.R.S. § 13-20-1101(6) ...................................................................................................6

C.R.S. § 13-90-119 ...................................................................................................7, 24

C.R.S. § 13-90-119(2) .................................................................................................28

C.R.S. § 13-90-119(3)(a-c) .........................................................................................29

C.R.S. § 1-13-709.5 .....................................................................................................18

**RULES**

FED. R. APP. P. 34(a)(2)(A) .................................................................................1

FED. R. APP. P. 34(a)(2)(C).................................................................................1

FED. R. CIV. P. 72 ...........................................................................................20

10th Cir. R. 46.5 ...............................................................................................1

10th Cir. R. 46.5(B)(1) .......................................................................................1

D.C.COLO.LAttyR 2(b)(1) ................................................................................33

D.C.COLO.LAttyR 5(a)(2)................................................................................33

**STATEMENT REGARDING PRIOR OR RELATED APPEALS**

1) *Coomer v. Make Your Life Epic LLC d/b/a ThriveTime Show et. al.*, 98 F.4th 1320 (10th Cir. 2024);

2) *Coomer v. Donald J. Trump for President, Inc. et. al.*, 552 P.3d 562 (Colo. App. 2024);

3) *Coomer v. Oltmann et. al.*, 2021CA1481, (Colo. App., Feb. 22, 2022) (granting Coomer's Motion to Dismiss and awarding fees and costs against Oltmann and his counsel);

4) *Coomer v. Giuliani*, 2024 WL 4848999 (Colo. App. 2024); and

5) *Coomer v. Salem Media of Colorado Inc. and Randy Corporon*, 2025 WL 209253 (Colo. App. 2025).

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not warranted. *See* FED. R. APP. P. 34(a)(2)(A). The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. FED. R. APP. P. 34(a)(2)(C). Appellant's request for oral argument serves to further delay the underlying proceeding and cause unnecessary expense in violation of 10th Cir. R. 46.5(B)(1). The only matter on which oral argument may be warranted is Appellee's Motion for Sanctions Against Appellant and His Counsel Pursuant to Tenth Circuit Rule 46.5, filed simultaneously herewith. Dismissal of this appeal should not be unduly delayed, however, for purposes of resolving that Motion. To the extent the Court is inclined to hear oral argument, Dr. Coomer reasserts his request for an expedited resolution of this dispute, as the Court

expressly invited in its October 28, 2024 Order on Appellee's Motion for Expedited Appeal Pursuant to Tenth Circuit Rule 27.5.

## STATEMENT OF JURISDICTION

This Court does not have jurisdiction over this appeal under the Tenth Circuit's well-established firm waiver rule. *See FTC v. Zurixx, LLC*, 2023 WL 2733500, at \*6 (10th Cir. 2023), *citing Morales Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005) (holding that a party who "fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions.") "The firm waiver rule promotes the efficient use of judicial resources based upon 'the same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court." *Hunter v. HCA*, 812 Fed. App'x. 774, 776 (10th Cir. 2020) (*citing U.S. v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996)).

**"I called around to and sent stuff to, and very well documented, to people like Gateway Pundit and others. I sent a thing to them saying look, that's not what happened. You need to take this down. <u>I never said I was a journalist.</u> I didn't say I have a recording. I didn't say any of that. You have to take this stuff down. You have to make these corrections."**

- **Joe Oltmann**[1]

**STATEMENT OF THE CASE**

## I.    Introduction

The Court has no jurisdiction to hear this frivolous appeal, which has been filed in knowing violation of the firm waiver rule. Appellant Joseph Oltmann (Oltmann) is a third party witness in the underlying proceeding who fled a deposition in the federal courthouse rather than provide court ordered testimony. He did not raise any material objections to the Magistrate Judge's Contempt Recommendations, which the Court issued thereafter. Nor did he ever raise or assert the Reporter's Privilege until a month *after* the district judge issued a Contempt Order affirming the Magistrate's Recommendations. Nonetheless, he now asserts that it was Dr. Coomer's obligation to raise this frivolous assertion of privilege on his behalf.

This is part of a yearslong pattern of bad faith delay and obstruction that has resulted in multiple sanctions orders against Oltmann and his counsel from both the Denver District Court and the Colorado Court of Appeals. This appeal represents the latest effort in Oltmann's bid to avoid accountability.

---

[1] App. Vol. 5 at p. 8; *Georgia Going to Delete Dominion Machines*, CONSERVATIVE DAILY PODCAST (Nov. 30, 2020).

Appellee Eric Coomer, Ph.D. (Dr. Coomer) is the former Director of Strategy and Security for Dominion Voting Systems. His life has been upended since being thrust into the conspiratorial 2020 presidential election fraud narrative. The origin of those false claims, and in fact the origin of the entire Dominion Voting Systems conspiracy theory, is Oltmann.

Shortly after the election was called for former President Biden in November 2020, Oltmann published an episode of his podcast "Conservative Daily" where he claimed to have "infiltrated" an "antifa conference call" on some unspecified date months prior to the election.[2] He claims he overheard an anonymous third party refer to another anonymous third party as "Eric" and "the Dominion guy." Oltmann claims this anonymous third party—who Oltmann admits to not actually seeing or ever having heard before—stated, "Don't worry about the election. Trump's not going to win. I made f-ing sure of it."[3] Oltmann describes this statement as a "paraphrase."[4] Oltmann claims that he then Googled "Eric Dominion Denver Colorado," took a screenshot of his search results, and then forgot about the conversation until after the election.[5] When the election was called, Oltmann claims to have remembered the "antifa call," at which point he determined he had overheard a plot to rig the 2020 presidential election.[6]

---

[2] App. Vol. 4 at 18.

[3] *Id*.

[4] *Id*.; *see also* App. Vol. 1 at 209.

[5] *Id*.

[6] *Id*. at 19.

Oltmann began pitching his story to anyone in the media who would listen, and his countless false publications about Dr. Coomer have given rise to numerous lawsuits across the country, including this one.[7]  Both Oltmann and his appellate counsel, Randy Corporon (Corporon),[8] are defendants in some of those proceedings.  Six of Oltmann's co-defendants have settled with Dr. Coomer, including Newsmax, who issued an on-air retraction and apology to Dr. Coomer for their false reporting.[9]

This appeal arises from Oltmann's refusal to disclose the basis of his made-up story about Dr. Coomer.  In this instance, Oltmann was ordered to disclose the identity of the supposed "conduit" who allegedly got him access to the supposed "antifa call."[10]  He was also ordered to identify the source who provided him access to Dr. Coomer's private Facebook account.[11]  These are both essential facts relevant to the falsity of Oltmann's story, and by extension, Defendants' liability.  Oltmann was similarly ordered to appear for his deposition at the courthouse.[12]  Rather than answer those questions, Oltmann fled the courthouse and immediately published an episode of his podcast later the same day,

---

[7] *See also Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319 (Denver Dist. Ct. 2020); *Coomer v. Salem Media of Colorado, Inc. et. al.*, Case No. 2021cv33632 (Denver Dist. Ct. 2021); *Coomer v. Lindell et. al.*, Case No. 1:22-cv-01129-NYW-SBP (Dist. Ct. Colo. 2022); *Coomer v. Byrne et. al.*, Case No. 24-cv-00008-TPB-SPF (M.D. Fla. 2022).

[8] Concerns surrounding Mr. Corporon's involvement with this appeal are addressed in Dr. Coomer's Motion for Sanctions Against Oltmann and his Counsel, filed simultaneously herewith.

[9] App. Vol. 4 at 163 FN 47.

[10] App. Vol. 1 at 139.

[11] *Id.*

[12] *Id.* at 131.

wherein he disparaged the Court and made numerous objectively false statements about what had occurred.[13]

Judge Martinez subsequently found Oltmann to be in contempt and ordered him to pay $1,000/day until he purged the contempt and answered court-required testimony.[14] Oltmann then spent weeks again publicly disparaging the Court, including comments voicing his frustration at not being able to identify Judge Martinez's home address.[15]

On October 3, 2024, the Court issued an Order to Show Cause and appear at a hearing on October 9, 2024. The next day, Oltmann filed this appeal, which caused the Court to vacate the October 9 hearing.

## II.    Procedural History

Dr. Coomer filed his first suit against Oltmann and others in state court on December 20, 2020.[16] All defendants in that proceeding filed anti-SLAPP Motions to Dismiss, and Dr. Coomer was allowed limited discovery against each pursuant to C.R.S. § 13-20-1101(6).[17] Dr. Coomer sought discovery relating to the alleged "conduit"

---

[13] *Id*. at 134-135; *see also* App. Vol. 3 at 257-266.

[14] App. Vol. 1 at 158.

[15] App. Vol. 4 at 214.

[16] *See Coomer v. Donald J. Trump for President, Inc*. 2020cv34319 (Denver Dist. Ct. Dec. 20, 2020). The procedural history of Dr. Coomer's related cases is to some extent inextricably intertwined with the specific underlying dispute here. That history is more thoroughly described in the various related appeals referenced above. To the extent possible, Dr. Coomer will rely on evidence in the record in this proceeding.

[17] App. Vol. 2 at 64-69.

who supposedly got Oltmann access to the "antifa call." He also sought discovery into who had provided Oltmann access to his private Facebook account.

In that proceeding, Oltmann, through counsel, invoked the "Reporter's Privilege" pursuant to C.R.S. § 13-90-119, claiming for the first time that he was a "journalist" and that he did not have to disclose his sources.[18] The Court held a lengthy hearing on the matter on July 7, 2021, wherein it heard sworn testimony from multiple witnesses, including Oltmann, and heard argument from the parties relating to the application of the privilege.[19] At the conclusion of that hearing, the Court determined that Oltmann was "evasive and not credible" and that his story was "probably false."[20] On the basis of this finding, it ordered Oltmann to disclose the identity of the supposed "conduit."[21] The Court subsequently ordered Oltmann to similarly disclose the identity of the individual who gave Oltmann access to Dr. Coomer's Facebook account.[22]

Oltmann refused to abide by those orders, and was subsequently sanctioned by the Court for his obstruction.[23] His counsel was also sanctioned.[24] When he appealed that

---

[18] *Id*. at 31, 71-172.

[19] *Id*.

[20] *Id*. at 31, 160-161 (90:22-91:7).

[21] *Id*. at 31, 162 (92:14-18).

[22] *Id*. at 31, 213-215 (39:21-41:12).

[23] *Id*. at 32, 236-240.

[24] *Id*. at 32, 242-250.

sanctions order, both he and his counsel were also sanctioned by the Colorado Court of Appeals.[25]  To date, Oltmann has paid $53,671.14 in sanctions for his conduct.[26]

At no point did Oltmann seek an interlocutory appeal of the Court's order compelling him to disclose the identity of these individuals.  Nor is the Court's rejection of Oltmann's assertion of the Reporter's Privilege the subject of his pending petition for certiorari to the Colorado Supreme Court.

Oltmann was subsequently subpoenaed in a related proceeding *Coomer v. Lindell et. al.*, 1:22-cv-01129-NYW-SBP.  In that proceeding, Oltmann made various efforts to escape testimony, including by falsely asserting that his attorney was not his attorney, and that he was a resident of Texas.[27]  Ultimately, he was ordered to appear for a deposition in the federal courthouse.[28]

As an essential witness in this case too, Oltmann was subpoenaed to produce documents and sit for a deposition.  The documents requested included communications with the supposed "conduit," as well as the individual that gave Oltmann access to Dr. Coomer's Facebook account.[29]  The subpoena also sought communications with his

---

[25] *Id*. at 32.

[26] *Id*.

[27] *Id*. at 33, 277-279.

[28] *Id*. at 33.

[29] *Id*. at 55.

appellate counsel, Corporon.[30]  Through his other counsel Mark Sares,[31] he filed an

Objection to Subpoena and Motion for Protective Order on February 26, 2024.[32]  At no

point in that Motion did Oltmann raise or cite to the Reporter's Privilege.[33]  The Motion

did, however, object to production of communications with Corporon as being subject to

attorney-client privilege.[34]

Dr. Coomer filed his Response to Oltmann's objections on March 5, 2024, wherein

he informed the Court of Oltmann's prior failed attempt to assert the Reporter's Privilege.[35]

He provided the entire transcript of that hearing,[36] as well as the ensuing sanctions ordered

against Oltmann and his counsel.[37]

On March 26, Oltmann filed his Reply.  Again, he made no reference whatsoever to

the Reporter's Privilege.[38]  The only reference to "privilege" anywhere in that Reply is

exclusively with respect to notes that Oltmann had provided to his then former and now

again current appellate counsel, Corporon.[39]

---

[30] *Id*.

[31] Sares remains Oltmann's counsel of record in the underlying proceeding, as well as in Oltmann's pending petition for certiorari to the Colorado Supreme Court.  He has not entered an appearance for purposes of this appeal.

[32] App. Vol. 1 at 27-36.

[33] *See generally, id*.

[34] *Id*. at 33.

[35] App. Vol. 2 at 31.

[36] *Id*. at 71-172.

[37] *Id*. at 236-252.

[38] App. Vol. 3 at 12-24.

[39] *Id*. at 21.

The Court held a hearing on Oltmann's objections on April 8, 2024.[40] Oltmann's counsel raised multiple arguments relating to attorney-client privilege.[41] He never raised or suggested that the Reporter's Privilege might apply, despite Dr. Coomer having alerted the Court of Oltmann's failed attempt to assert that privilege almost three years prior in *Coomer v. Donald J. Trump for President, Inc.*[42]

Counsel for Dr. Coomer explained the evidentiary significance of the individual that gave Oltmann access to Dr. Coomer's Facebook account. Specifically, he laid out the relevant timeline of events and explained the factual basis for Dr. Coomer's belief that Oltmann had identified Dr. Coomer well before the election and that his entire story is and has always been a set up.[43]

The Court overruled Oltmann's objections and ordered him to produce documents in response to the subpoena and to answer relevant questions during his deposition, which the Court set for June 6, 2024.[44] The Court designated this questioning as Attorneys Eyes Only, meaning any third parties would have to exit the deposition before that questioning could occur.[45] The Court further granted Dr. Coomer's request that Oltmann appear for

---

[40] App. Vol. 1 at 60-124.

[41] *Id*. at 104 (45:20-23); 110 (51:18-24); 111-112 (52:10-53:9).

[42] App. Vol. 2 at 31.

[43] App. Vol. 1 at 99-102 (40:23-43:13).

[44] *Id*. at 86-87 (27:22-28:28:9); 95 (36:4-22); 110 (51:10-13).

[45] *Id*. at 95 (36:4-22); 103-104 (44:8-45:10).

his deposition in the courthouse, just as both the Denver District Court and another division of the Federal District Court had already done twice in related cases.[46]

During the hearing, Oltmann claimed that he had reason to fear for his own safety by appearing for a deposition.[47] The Court then went out of its way to arrange secure entry and exit for Oltmann, presumably including security provided by the U.S. Marshals.[48]

On May 17, 2024, Dr. Coomer filed his Third Unopposed Motion to Amend the Scheduling Order, based in part on delays occasioned by Oltmann's objections to the subpoena.[49]

Oltmann appeared for his deposition on June 6, 2024. From the very first moment, he was agitated, vulgar, and combative, shouting at Dr. Coomer (who was present), "I can stare you down all fucking day."[50]

At no point in the deposition did Oltmann or his counsel claim or assert the Reporter's Privilege in response to any question. At one point, Oltmann stated, "The only reason nobody's been subjected to threats is because I use my privilege as a journalist."[51] This was a non-sequitur that Oltmann raised when pressed on what evidence, if any, he had

---

[46] *Id.* at 121-122 (62:22-63:15).

[47] *Id.* at 71-72 (12:19-13:21).

[48] *Id.* at 121-122 (62:22-63:15).

[49] App. Vol. 3 at 246.

[50] App. Vol. 1 at 175 (3:2-10). Oltmann's emotional volatility, frequent calls for political violence, and repeated public statements that he is constantly armed are among the reasons why Dr. Coomer has consistently requested that Oltmann's depositions take place in the courthouse.

[51] *Id.* at 233-234 (61:9-62:13).

to support his baseless claim that the supposed "conduit" was or would be subject to any form of threats or harassment. It was not an objection to the question posed.

Oltmann testified for roughly three hours before counsel for Dr. Coomer turned to questioning related to the supposed "conduit" to the "antifa call" and the source that provided access to Dr. Coomer's Facebook account. As required, counsel cleared the deposition of third parties, including Dr. Coomer.[52] He then asked Oltmann to identify the individual who gave him access to Dr. Coomer's Facebook account.[53] Oltmann refused to respond, and counsel repeated the question at least five times.[54] Oltmann's counsel did not object to the question, nor did he or Oltmann suggest he was not required to answer. Oltmann's counsel acknowledged that Oltmann had been ordered to answer the question.[55]

Because of the obfuscation, counsel for Dr. Coomer suspended the deposition while counsel for both Dr. Coomer and Oltmann held a conference with Magistrate Judge Starnella in her chambers to address Oltmann's conduct.[56] At no point in that conversation did counsel for Oltmann ever raise or assert the Reporter's Privilege.

Upon returning to the jury room, the parties discovered that Oltmann was missing.[57] Oltmann's counsel made several calls in an effort to identify his whereabouts.[58] Mr. Sares

---

[52] *Id*. at 330-331 (158:20-159:5).

[53] *Id*. at 331-333 (159:6-161:1).

[54] *Id*. at 332 (160:9-19).

[55] *Id*.

[56] App. Vol. 1 at 133.

[57] App. 3 at 284.

[58] *Id*.

eventually confirmed that Oltmann had left the courthouse and would not be returning.[59] Dr. Coomer's counsel then requested a hearing with Magistrate Judge Starnella.

The Court convened a hearing shortly thereafter, and Oltmann's counsel requested that the courtroom be cleared and that the transcript of the hearing be under seal.[60] At no point in the hearing did Mr. Sares invoke the Reporter's Privilege or suggest it accounted for Oltmann's behavior.[61] In fact, he offered no rationale whatsoever for Oltmann's conduct. The Court invited him to make a statement, and all he said was, "As to Mr. Oltmann's leaving the courthouse, just for the Court's own edification, this was as much a surprise to me. I of course had no part in that, and wish the Court to understand."[62]

Hours later, Dr. Coomer and his counsel became aware that Oltmann was broadcasting his podcast live from his home in Douglas County. Oltmann disparaged the Court, referred to Magistrate Judge Starnella as a "DEI Judge," and told various lies about what had just occurred.[63] The next day, Dr. Coomer submitted a Supplemental Filing Regarding June 6, 2024 Hearing to apprise the Court of Oltmann's various statements, claims, admissions, and waivers.[64]

---

[59] *Id.*

[60] App. Vol 6 at 16-17 (2:14-3:3).

[61] *See generally*, *id.* at 15-36.

[62] *Id.* at 27 (13:4-9).

[63] App. Vol. 3 at 261-265.

[64] *Id.* at 257-266.

On June 14, 2024, Magistrate Judge Starnella issued a Recommendation for Finding of Civil Contempt Against Third Party Witness Joseph Oltmann (the Recommendations).[65] She recommended that Oltmann be held in contempt, fined $200 per day, and ordered to pay the fees and costs of all parties relating to his deposition.[66] The Recommendations further *recommended* "that Mr. Oltmann be ordered to appear before the district judge to show cause why he should not be held in contempt of court." The Recommendations did not in any way promise or guarantee a *second* hearing on the matter.[67]

On June 28, 2024, Oltmann, through counsel, filed Objections to the Recommendations.[68] The 3-page objections only raised three minor issues that did not serve to meaningfully contradict or object to any of the Recommendations. First, Oltmann claimed he had actually complied with his document disclosure obligations.[69] Second, Oltmann's counsel corrected the Court with respect to its findings regarding his own communications with Oltmann after he had fled the courthouse.[70] And third, Oltmann attempted to parse his constant calls for violence and to assert that he himself has some basis to fear for his safety.[71]

---

[65] App. Vol. 1 at 126-144.

[66] *Id*. at 143-144.

[67] *Id*.

[68] App. Vol. 3 at 283-285. **Remarkably, Oltmann does not even include this document – *on which the validity of his entire appeal turns* – in his own Appendix. Nor does he ever cite to it even a single time.**

[69] *Id*. at 283-284.

[70] *Id*. at 284.

[71] *Id*. at 284-285.

The objections did not assert that Oltmann's conduct was excused or accounted for by the Reporter's Privilege, nor did they even raise the alleged privilege.[72]  The objections did not attempt to excuse Oltmann's conduct in fleeing the deposition in any way, nor did Oltmann argue that either a daily fine or a finding of contempt was improper.[73]  Notably, the objections did not request a second hearing on the matter.[74]

On July 12, 2024, Dr. Coomer filed his response to Oltmann's objections.[75]  He pointed out that Oltmann's document disclosures cannot be considered complete unless and until Oltmann identifies the anonymous sources from whom the communications are sought.[76]  He agreed with Oltmann's counsel's factual clarification regarding communications with Oltmann following his flight from the courthouse.[77]  Dr. Coomer then provided a lengthy explanation of why Oltmann's constant calls for violence are sincere and dangerous, as well as an explanation of why his claims of fearing for his or his sources' safety are completely made up and demonstrably without merit.[78]  Dr. Coomer concluded by requesting more stringent coercive measures.[79]

---

[72] *Id*.

[73] *Id*.

[74] *Id*.

[75] App. Vol. 4 at 5-16.

[76] *Id*. at 6-7.

[77] *Id*. at 7-8.

[78] *Id*. at 8-14.

[79] *Id*. at 14-15.

On September 4, 2024, Judge Martinez issued an Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendations (the Contempt Order).[80]  He ordered Oltmann to pay the attorney's fees and costs incurred by the parties relating to Oltmann's deposition, and increased the fine recommended by Magistrate Judge Starnella to a $1,000 daily fine.[81]

Immediately after the Contempt Order was issued, Oltmann publicly announced that he would never comply with it.[82]  He stated, "So you've got an illegal judge, a crooked judge that decides to destroy people to be a weapon and an arm for the DOJ, because you know that they were involved in this."[83]  He went on to assure his audience that the upcoming presidential election would be rigged and to express his frustration with his apparent inability to identify Judge Martinez's home address.[84]  In the days thereafter, Oltmann's daughter set up a "Give Send Go" account to raise money for Oltmann to pay his daily sanctions.[85]

On September 17, 2024, Dr. Coomer filed his Motion for Attorney Fees and Costs, wherein he requested an award of fees and costs in the amount of $19,623.24.[86]

---

[80] App. Vol. 1 at 146-158.

[81] *Id*. at 157-158.

[82] App. Vol. 4 at 212.

[83] *Id*. at 214.

[84] *Id*., FN 7.

[85] *Id*. at 217.

[86] *Id*. at 100-104.

Given Oltmann's public assurances of non-compliance, Dr. Coomer filed a Motion to Show Cause on September 26, 2024, wherein he requested various remedies, including that Oltmann be ordered to appear in person for a Show Cause hearing, that Oltmann be ordered to bring all sums due and owing to that hearing, that the hearing be conducted in open court, and that a warrant for Oltmann's arrest be issued if he failed to comply.[87]

The Court ordered Oltmann to respond by October 1, 2024.[88]  Oltmann requested an additional two days, up to and including October 3, in which to respond.[89]  The Court allowed Oltmann one additional day, until October 2.[90]

Thereafter, on October 2, 2024, Oltmann filed his response wherein he asserted *for the first time* that the Reporter's Privilege shielded him from complying with the subpoena.[91]  He also made unsupported claims about fearing for his safety, and repeated the demonstrably false claim that he lives in Texas.[92]

Dr. Coomer filed his Reply in Support of Motion to Show Cause the following day, wherein he reminded the Court that Oltmann only claims to be a "journalist" when he perceives some benefit in the designation, but affirmatively denies it when he perceives otherwise.[93]  Dr. Coomer pointed out that Oltmann had undeniably waived any assertion

---

[87] *Id*. at 212-227.

[88] *Id*. at 310.

[89] *Id*.

[90] App. Vol. 5 at 7.

[91] App. Vol. 1 at 163-169.

[92] *Id*. at 161.

[93] App. Vol. 5 at 8.

of the Reporter's Privilege. He also provided the Court with a chronology of Oltmann's long history of falsely claiming Texas residency when it suits him, and noting that if the Court took this false claim at face value, then it should issue a criminal voter fraud referral for Oltmann in light of his repeated and ongoing participation in Colorado elections.[94]

The Court granted Dr. Coomer's Motion to Show Cause that same afternoon, and ordered Oltmann to appear in person for a Show Cause hearing on October 9, 2024.[95]

Oltmann, through his appellate counsel Corporon, filed his Notice of Appeal the following day, October 4, 2024.[96] The Court issued an order that day requiring briefing from the parties regarding its ongoing jurisdiction to proceed with the Show Cause hearing in light of Oltmann's Notice of Appeal.[97]

After the entry of that Order, and after Oltmann's Notice of Appeal, Oltmann filed his Response to Dr. Coomer's Motion for Fees and Costs.[98] At no point did Oltmann deny his liability for those fees and costs, nor did he ever mention the Reporter's Privilege.[99]

---

[94] *Id*. at 16-17; *see also id*. at 231-232. To the extent Oltmann persists in maintaining this falsehood, Dr. Coomer notes that Oltmann is *still* registered to vote in Colorado, and encourages the Court to make a criminal referral pursuant to C.R.S. § 1-13-709.5 if Oltmann adheres to the claim of residency described in his sworn affidavit.

[95] *Id*. at 241.

[96] App. Vol. 6 at 8.

[97] *Id*. at 10.

[98] *Id*. at 11-23.

[99] *Id*.

Instead, he effectively conceded his contempt by only arguing for various reductions in the amount sought.[100]

Dr. Coomer filed his Brief Regarding Jurisdiction on October 7, 2024, and Oltmann filed his Response on October 8, 2024.[101]  The Court issued an Order finding it lacked jurisdiction to hold the Show Cause hearing that same afternoon.[102]

## ARGUMENT

### I.    The Firm Waiver Rule Precludes this Court from Hearing this Appeal.

#### A.    Standard of review and preservation of appeal

A district court's determination of civil contempt is reviewed for abuse of discretion. *FTC v. Kuykendall*, 371 F.3d 745, 756 (10th Cir. 2004).  In making that assessment, the Court reviews question of law de novo.  *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1160 (10th Cir. 2020).  Factual findings and the amount of a compensatory sanction are reviewed for clear error.  *Id*. at 1160-61.  "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 1161.

Dr. Coomer preserved this argument with respect to the firm waiver rule on multiple occasions, including in his Reply in Support of Motion to Show Cause,[103] and his Brief Regarding Jurisdiction.[104]

---

[100] *Id*.

[101] *Id*. at 33-39; 91-97.

[102] *Id*. at 109.

[103] App. Vol. 5 at 9-13.

[104] App. Vol. 6 at 37-39.

### B.     The firm waiver rule applies here

As a preliminary matter, this Court does not have jurisdiction to hear this appeal.

The Tenth Circuit has adopted a firm waiver rule under which a party who "fails to make

a timely objection to the magistrate judge's findings and recommendations waives

appellate review of both factual and legal questions."  *See FTC v. Zurixx, LLC*, 2023 WL

2733500, at *6 (10th Cir. 2023) (*Zurixx III*), *citing Morales Fernandez v. INS*, 418 F.3d

1116, 1119 (10th Cir. 2005) (we do not apply this rule "when (1) a pro se litigant has not

been informed of the time period for objecting and the consequences of failing to object,

or when (2) the interests of justice require review.")  "The firm waiver rule promotes the

efficient use of judicial resources based upon 'the same rationale that prevents a party from

raising an issue before a circuit court of appeals that was not raised before the district court."

*Hunter v. HCA*, 812 Fed. App'x. 774, 776 (10th Cir. 2020) (*citing U.S. v. One Parcel of*

*Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996)).

Oltmann had fourteen days to object to the magistrate judge's order imposing a *per*

*diem* fine and awarding fees.  *See* FED. R. CIV. P. 72, *see also* Order to Show Cause.[105]  As

the Court noted in the Contempt Order, Oltmann's Objections did "not dispute the material

facts certified in the Recommendation, nor [did] he ask for an evidentiary hearing."[106]  This

was further noted in the Order to Show Cause.[107]

---

[105] App. Vol. 1 at 597-598.

[106] *Id*. at 155.  Oltmann did dispute a finding that he had not produced responsive documents, but this issue is derivative of the wider concerns over the identities of the individuals in question and cannot be confirmed absent those disclosures.

[107] *Id*. at 597-598.

Oltmann's Objections did not even refer to the award of attorney fees and costs, the *per diem* sanction, or any of the facts supporting a finding of contempt.[108]  If anything, the Objections acknowledged the impropriety of Oltmann's conduct, and sought only to avoid sanctions on his counsel, Mr. Sares.  As a result, the Order is not subject to appellate review.

Neither exception to the firm waiver rule applies here.  At no point in the underlying proceedings was Oltmann ever representing himself *pro se*.  On the contrary, he was represented by counsel throughout, including with respect to numerous motions, responses, and replies, as well as at multiple hearings and his deposition.  Oltmann's claim that he "was for all intents and purposes acting *pro se* with regard to protecting his right to assert the newsperson's privilege" is, therefore, completely without merit.  *See* Oltmann Opening Brief (OB) at p. 29.

As discussed more below, the second exception is also inapplicable.  In reality, the interests of justice require a speedy disposition of this frivolous, dilatory appeal.

## II.     The District Court Did Not Err in Finding That Oltmann waived the Reporter's Privilege.

### A.      Standard of review and preservation of appeal

A district court's determination of civil contempt is reviewed for abuse of discretion. *FTC v. Kuykendall*, 371 F.3d 745, 756 (10th Cir. 2004).  In making that assessment, the Court reviews question of law de novo.  *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1160 (10th Cir. 2020).  Factual findings and the amount of a compensatory sanction

---

[108] *See generally*, App. Vol. 3 at 283-285.

are reviewed for clear error. *Id*. at 1160-61. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 1161.

As discussed above, Oltmann did not preserve any argument relating to the Reporter's Privilege for this appeal.

## B.     Oltmann waived any potential assertion of the Reporter's Privilege

Oltmann's first argument is difficult to discern or follow, primarily due to lack of citation to the record. For example, the argument references Plaintiff's "Motion for Sanctions," but Plaintiff never filed a Motion for Sanctions.[109] Within an hour after Oltmann fled the Courthouse, the Court convened a contempt hearing.[110] Dr. Coomer submitted a Supplemental Filing the following day to apprise the Court of the substance of Oltmann's podcast immediately following his departure from the Courthouse.[111] These events gave rise to the subsequent Recommendations. Oltmann's argument that "Coomer filed a Motion for Sanctions on the issue of noncompliance, but failed to put the privilege squarely before the court in its brief" (OB, p. 18) is, therefore, unintelligible. Given this lack of clarity, Dr. Coomer assumes from context that Oltmann must be referring to the contempt hearing when he refers to a "Motion for Sanctions." What "brief" he is referring

---

[109] As discussed more below, Oltmann's Appendix is devoid of a single document filed by Dr. Coomer in this case, nor does he cite to any of Dr. Coomer's pleadings in the Opening Brief. There is little evidence, if any, that his counsel even read anything filed by Dr. Coomer in this case, or made any effort to familiarize himself with the various relevant hearing transcripts.

[110] App. Vol. 1 at 126-127.

[111] App. Vol. 3 at 257-266

to is entirely unclear.[112]  In any case, Dr. Coomer—and Dr. Coomer alone—*did* bring Oltmann's prior invocation of the alleged privilege to the Court's attention.[113]  Oltmann, however, never said a word about it or attempted to assert the privilege in *this* proceeding.

Oltmann contends that it was Dr. Coomer's responsibility to raise an objection pursuant to the Reporter's Privilege on Oltmann's behalf, and then rebut it.  OB, pp. 18-22.  This is not and cannot be the law.  As discussed above, and confirmed by the record, Oltmann never asserted the Reporter's Privilege at any point prior to or during his deposition.  Not once.  Nonetheless, Oltmann goes on to argue that "It is Oltmann's contention that the Motion for Protective Order and the exhaustive arguments presented leading up to and during the April 8, 2024 hearing, established a thorough record of the reason's for Oltmann's noncompliance."  OB, p. 19.  On this point, Dr. Coomer agrees.  Notably, Oltmann does not attempt to cite any instance in those "exhaustive" arguments wherein Oltmann actually asserted the privilege.  Nor can he.

Instead, Oltmann makes the unsupported and unsupportable leap that "The arguments [in other proceedings] span over a three-year period, and were grafted into this case."  OB, p. 19.  Oltmann provides no authority for the proposition that an argument rejected by a separate court in a different proceeding nearly three years prior is or should somehow have a preclusive effect in this case.

---

[112] As discussed more in Dr. Coomer's Motion for Sanctions against Oltmann and his Counsel Pursuant to 10th Cir. Rule 46.5, filed simultaneously herewith, the Court can and should reasonably infer that Corporon did not actually make any effort to familiarize himself with the facts giving rise to this appeal.

[113] App. Vol. 2 at 31.

Even if prior proceedings in *Coomer v. Donald J. Trump for President, Inc.* or *Coomer v. Lindell et. al.* were somehow "grafted into" this case, those proceedings affirm the unavailability of the Reporter's Privilege in this case.

In *Coomer v. Donald J. Trump for President, Inc.*, for example, the Court held a lengthy hearing on Oltmann's attempt to assert the privilege.[114]  That hearing featured sworn testimony from multiple witnesses, including Oltmann.[115]  The Court expressly stated at the outset the purpose of the hearing was to assess whether the protections afforded by C.R.S. § 13-90-119 should apply, and it proceeded to weigh and consider all of the factors outlined in *Gordon v. Boyles*, 9 P.3d 1106 (Colo. 2000).[116]  At the conclusion of that hearing, the Court determined that Oltmann's testimony was "evasive and not credible."[117]  It determined that his story was "probably false" and held that the Reporter's Privilege could not apply to shield the identities of Oltmann's supposed source(s).[118]

Given the foregoing, it is not at all clear how or why Oltmann argues that "Instead of dealing with the newsperson privilege, the judge directed the parties to collaborate on a protective order that would still require disclosure of Oltmann's sources."  OB, p. 10.  In reality, the Court engaged with that question directly and at length.  If, as Oltmann claims,

---

[114] App. Vol. 2 at 71-172.

[115] *Id*. at 77-141.

[116] *Id*. at 73-76 (3:15-6:16); 141-163 (71:15-93:8).

[117] *Id*. at 160-161 (90:22-91:7).

[118] *Id*.

those proceedings were "grafted into" this case, then both Oltmann and Dr. Coomer rightly would have understood the privilege to be inapplicable and never raised for that reason.

The Court in *Lindell* never made any findings with respect to the alleged privilege, nor did it have occasion to weigh the *Boyles* factors. That case is, therefore, neutral for Oltmann, at best, even if it too were expected to somehow form the basis of the Court's analysis. Nonetheless, in apparent reference to this proceeding, Oltmann still falsely asserts that "the same issue had been litigated in two other cases." OB, p. 14. This is another blatant misrepresentation of material fact.

In any case, the proposition that Dr. Coomer had an affirmative obligation to raise this objection on Oltmann's behalf is meritless. Oltmann focuses on his status as the "non-moving party," at least with respect to what he refers to as the "Motion for Sanctions." OB, pp. 18-19. But Oltmann *was* the moving party with respect to his Objection to Subpoena and Motion for Protective Order.[119] In those Objections, and in the subsequent hearing on the motion, his counsel, Mr. Sares, raised privilege objections multiple times,[120] including and specifically with respect to communications between Oltmann and his appellate counsel, Corporon.[121] The Court heard argument about how those objections would be expected to play out in the eventual deposition, and addressed those objections individually and at length and made findings with respect to each. With respect to the specific information sought, the Court went so far as to order that the deposition room be

---

[119] App. Vol. 1 at 27-36.

[120] *Id*. at 104 (45:20-23); 110 (51:18-24); 111-112 (52:10-53:9).

[121] *Id*.

cleared of third parties ahead of time, and that the testimony be deemed Attorneys Eyes Only.[122]

Even if it were somehow Dr. Coomer's burden to raise frivolous objections on Oltmann's behalf, and then refute them, Dr. Coomer did that.[123] He even attached the entire transcript from the hearing discussed above.[124] Both Oltmann's counsel and the Court had the benefit of access to that argument prior to the April 8, 2024 hearing. Oltmann never raised the Privilege in his Reply, nor did he ever raise it at the hearing.

### C. The Magistrate Judge's findings were not "ambiguous"

Oltmann next argues that the Recommendations were "ambiguous" in that they "certified no finding that disturbed the newsperson privilege" and that "The judge made no recommendation that disturbed the privilege." OB, p. 20. But the reason for this is obvious. The privilege was never asserted. The same could be said of the spousal privilege, the clergy-penitent privilege, or the doctor-patient privilege. Those privileges were never raised in this case either, but the Court's silence on them cannot and should not be read to suggest the potential propriety of their application to the facts.

Oltmann next engages in hypotheticals, which are similarly without merit. He queries, for example, what would happen if Oltmann asserted attorney client privilege or work product privilege during his deposition, and then Dr. Coomer failed to apprise the Court of that assertion in its subsequent motion. OB, pp. 20-21. Here again, the answer is

---

[122] *Id*. at 95 (36:4-22); 103-104 (44:8-45:10).

[123] App. Vol. 2 at 31.

[124] *Id*., FN 5; *see also id.* at 71-172.

obvious. In that instance it would also be Oltmann's obligation to inform of the Court of the basis for his nonresponse. Of course, in this case, Oltmann's counsel *did* assert attorney client privilege and work product objections during his deposition.[125] Neither he nor Oltmann raised an objection under the Reporter's Privilege though. In fact, Oltmann was asked who gave him access to Dr. Coomer's Facebook account *at least five times* and neither he, nor his counsel asserted the privilege once.[126] That line of questioning expressly referenced Judge Starnella's order that Oltmann answer that specific question, but Oltmann still refused.[127]

Oltmann is essentially arguing that adverse parties have a duty to raise frivolous objections on their adversary's behalf, then affirmatively rebut them. There is obviously no authority for this proposition, nor does Oltmann attempt to cite to any. To the extent Oltmann may be trying to argue for an extension or modification of the law, the implications of this proposal are absurd. Taken to its logical conclusion, any party seeking to compel disclosures during discovery would have an affirmative obligation to cycle through every possible objection to every line of questioning and explain to the court why that potential privilege, no matter how frivolous or inapposite, should not apply. Only at that point would the resisting party have any obligation to argue its own position. This backwards approach would work chaos on the discovery process in every single case.

---

[125] App. Vol. 1 at 242 (70:1-6); 251-252 (79:21-80:5).

[126] *Id*. at 331-333 (159:6-161:1).

[127] *Id*. at 332 (160:4-19).

## III. The Reporter's Privilege Does Not Apply.

As with the proceedings below, at no point in Oltmann's Opening Brief does he ever tell the Court what the Reporter's Privilege is, why it should apply here, or what test the Court applies to determine if the privilege has been properly asserted. This is unsurprising given the impossible standard for Oltmann to meet were he to have actually asserted the privilege. That issue is, therefore, not before the Court, but Oltmann nonetheless apparently requests a finding upholding application of the privilege below.[128]

Perhaps foreseeing the potential result of a hypothetical effort to assert the privilege, Oltmann suggests that another appeal is likely if this Court remands the issue to the district court ("If the lower court finds that the privilege does not apply, Oltmann has little choice but to appeal that issue back to this Court once it becomes germane.") OB, p. 25. Given Oltmann's years of bad faith dilatory conduct, Dr. Coomer has no doubt that he will exploit any opportunity to file another frivolous appeal that will delay his obligation to finally tell the truth. Dr. Coomer, therefore, briefly addresses the standard so that the Court might preclude Oltmann's next inevitable attempt at delay.

Section 13-90-119(2) provides members of the mass media a privilege shielding them from having to provide testimony and from being questions about news information that the person learned while acting in a newsperson's capacity. *Gordon v. Boyles*, 9 P.3d

---

[128] The only clear relief that Oltmann explicitly requests is that this Court remand the question for a Show Cause hearing before the district judge. OB at 29-30. But the scheduled Show Cause hearing is what Oltmann filed this appeal to avoid in the first place. This is further compelling evidence that this entire appeal is strictly for purposes of delay.

1106, 1117 (Colo. 2000). The privilege, however, is qualified. *Id.* A court may compel a

newsperson to disclose information if the party seeking the information can demonstrate:

> (a) That the news information is directly relevant to a substantial issue involved in the proceeding;
>
> (b) That the news information cannot be obtained by any other available means; and
>
> (c) That a strong interest of the party seeking to subpoena the newsperson outweighs the interests under the First Amendment to the United States constitution of such newsperson in not responding to a subpoena and of the general public in receiving news information.

*Id.* (citing C.R.S. § 13-90-119(3)(a-c); *Henderson v. People*, 879 P.2d 383, 393

(Colo. 1994). If there exists sufficient proof of actual malice, the identities of the

declarant's sources may be relevant for the plaintiff to prove, for instance, that the

statement was false or to overcome the affirmative defense of truth. *Id.* (*citing Churchey*

*v. Adolph Coors Co.*, 759 P.2d 1336, 1341 (Colo. 1988). In some cases, disclosure of the

source may be relevant to prove that the source did not exist. *Id.*

Given these standards, Oltmann cannot possibly use the Reporter's Privilege to

shield his own disclosure obligations. Who got Oltmann on the alleged "antifa call" is

directly relevant to a substantial issue in this (and other) proceeding(s). That is the only

piece of evidence that could conceivably corroborate whether the alleged call ever even

occurred, and who, if anyone, was on that call. Similarly, the Facebook source would be

able to confirm *when* Oltmann identified Dr. Coomer, and if the entire story was, as

Dr. Coomer maintains, a setup.[129]   There is no possible argument that these are not important pieces of information in this defamation case, wherein the truth of the claim is directly at issue.  The first factor is, therefore, easily met.

With respect to the second factor, Oltmann is the only person in the world who can produce the necessary information.  It cannot be obtained by any other means.  There is not, and cannot be, any possible argument against this conclusion.

Only the third factor could possibly be disputed, but Dr. Coomer's interest in knowing the origin of the false story that has ruined his career and upended his life far outweighs Oltmann's desire to never account for what he has done.  As the origin of the Dominion Voting Systems conspiracy theory, the public also has a significant interest in receiving the "news information" at issue.  Oltmann can only point to his own baseless, paranoid speculation that the "source," if such a person even exists, would be subject to some form of harassment.  This is not evidence.  Conversely, there is a substantial body of evidence that Oltmann's claimed concerns are without merit.[130]  He does not have any rebuttal to that evidence, nor does he even rebut that evidence.

Finally, Oltmann is not actually a journalist, and he affirmatively denied being one at the time of his supposed efforts to "investigate antifa."[131]  Today, however, he perceives a benefit in playing one on his podcast in hopes of delaying his legal troubles.

---

[129] *See, e.g.*, App. Vol. 1 at 99-102 (40:23-43:13).

[130] App. Vol. 4 at 10-14.

[131] App. Vol. 5 at 8.

**IV.    Oltmann Was Not Denied an Opportunity to be Heard.**

**A.    Standard of review and preservation of appeal**

"There is no need for a court to hold an evidentiary hearing in a matter when there are no material facts in dispute." *Wyoming v. Livingston*, 443 F.3d 1211, 1224 (10th Cir. 2006); *see also Luo v. Wang*, 2023 WL 8613862, at *4 (10th Cir. 2023) (rejecting challenge to district court's decision not to hold a hearing on civil contempt finding where "most of these disputes did not concern the events of [the contemnor's direct contempt"); *Lincoln Nat'l Life Ins. Co. v. Marchiol*, 2013 WL 673990, at *2 (D. Colo. Feb. 22, 2013) (declining to hold a contempt hearing where no relevant facts were in dispute); *Silva v. Coast to Coast Fin. Sol. Inc.*, 2020 WL 9432701, at *3 (D. Colo. Feb. 10, 2020) (same).

Oltmann did not preserve this issue for appeal.  He had a hearing.  Then, he waived any opportunity to request a *second* evidentiary hearing.

**B.    Oltmann had a hearing, and waived any right to a second**

Oltmann alleges that the district court violated his due process rights by not holding a hearing on the Recommendations.  Once again, Oltmann provides no authority for this proposition, nor can he.  "There is no need for a court to hold an evidentiary hearing in a matter when there are no material facts in dispute." *Wyoming v. Livingston*, 443 F.3d 1211, 1224 (10th Cir. 2006).

In reality, Oltmann *had* a contempt hearing on June 6, 2024.[132]  His counsel was there, but he was not because he was doing his podcast after he fled the courthouse.[133]  His counsel called him to return, but he refused.[134]  During that hearing, his counsel had the opportunity to assert the Reporter's Privilege.  He did not.  Oltmann makes no effort to explain how or why this hearing did not address his supposed concern over "due process," nor can he.

Even then, Oltmann went on to waive a *second* hearing when he did not object to any of the relevant Recommendations and when he did not request a hearing in his Objections.  He did not file a motion to reconsider the Contempt Order after it was issued, nor did he request a hearing then either.  In fact, Oltmann never suggested a hearing was warranted until *after* Dr. Coomer filed a Motion to Show Cause, several weeks after the Contempt Order was issued, and at which point Oltmann had already incurred $28,000 in daily sanctions.  Then, when the Court scheduled a Show Cause hearing, Oltmann filed this appeal to avoid it.

In an apparent concession that Oltmann waived his right to a hearing, Oltmann's argument under this issue quickly transitions to the application of the firm waiver rule for the argument that Oltmann, who was indisputably represented by counsel throughout the events at issue, was actually acting *pro se.*  Oltmann first argues that "attorney Marc Sares appeared in a limited role to defend nonparty Oltmann for a single deposition."  OB, p. 23.

---

[132] Supp App. Vol. 7 at 15-36.

[133] App. Vol. 3 at 257-266.

[134] *Id*. at 284.

This is a knowingly false misrepresentation to the Court. Mr. Sares' Entry of Appearance includes no such limitation.[135] And the facts readily refute the falsehood.

Entries of limited appearance are governed by D.C.COLO.LAttyR 5(a)(2). Specifically, the Rule establishes the following requirements:

> As permitted under D.C.COLO.LAttyR 2(b)(1), an attorney may provide limited representation to an unrepresented party or an unrepresented prisoner in a civil action **by order granting a motion which defines the scope of limited representation with reasonable particularity and certifies the approval of the unrepresented party or unrepresented prisoner. Any change in the scope of limited representation must be approved by this Court.**

D.C.COLO.LAttyR 5(a)(2) (emphases added).

None of that happened here. Mr. Sares drafted multiple motions, responses, and replies. He represented Oltmann at multiple hearings, and communicated with Dr. Coomer's counsel for months before, during, and after the facts at issue here. He still has not withdrawn, and his firm filed a response to Dr. Coomer's Motion for Attorney Fees and Costs *after* Oltmann's current counsel, Corporon, filed a Notice of Appeal. Mr. Sares also remains Oltmann's counsel of record in related proceeding *Coomer v. Donald J. Trump for President, Inc.* He has served in that role for years now, including by arguing on Oltmann's behalf at the Colorado Court of Appeals and filing a petition for certiorari to the Colorado Supreme Court on his behalf in that proceeding.

As with the entirety of Oltmann's Opening Brief, the assertion that "the insurance provider would not cover [Oltmann's] representation in challenging contempt

---

[135] App. Vol. 6 at 124.

proceedings" is made entirely without evidence. In reality, Mr. Sares represented Oltmann in a contempt hearing,[136] filed objections to the Magistrate Judge's Recommendations,[137] filed a response to Dr. Coomer's Motion to Show Cause,[138] and filed a response opposing Dr. Coomer's Motion for Fees and Costs.[139] Oltmann literally had "opportunit[ies] to be heard" time and time and time again. The Court should reject any suggestion that Oltmann was representing himself *pro se* in this matter. As discussed more in Dr. Coomer's Motion for Sanctions, filed simultaneously herewith, this is one of multiple outright falsehoods that warrant sanctions.

Oltmann relies primarily on *Key Energy Resources, Inc. v. Merrill*, 230 F.3d 1197 (10th Cir. 2000), for his argument that the "interests of justice" exception to the firm waiver rule should apply. OB, pp. 24-26. *Key* identified three factors for the Court to consider when addressing arguments under this exception: (1) the factual circumstances purporting to excuse the failure to file timely objections; (2) whether the district court examined untimely filed objections; and (3) the merits of a litigant's underlying claims. *Id*. at 1200. "The interests of justice exception in counseled cases is a narrow one." *Id*. "[I]n counseled, civil, nonhabeas cases, the merits of the underlying case should not be considered in determining whether the interests of justice exception has been met." *Id*. (*citing Theede v. U.S. Dep't of Labor*, 172 F.3d 1262, 1268 (10th Cir. 1999)).

---

[136] App. Vol. 7 at 15-36.

[137] App. Vol. 3 at 283-285.

[138] App. Vol. 1 at 160-169.

[139] App. Vol. 6 at 11-23.

But there was no failure to file timely objections.  Oltmann's objections were timely, but they did not challenge any of the findings giving rise to the contempt Recommendation.

With respect to the second factor, there are no "untimely filed objections" at issue.  Oltmann never filed late objections.  Instead, he asserted the Reporter's Privilege for the first time in response to Dr. Coomer's Motion to Show Cause nearly a month after Judge Martinez issued the Contempt Order.

Regarding the third factor, Oltmann asserts that "The merits of Oltmann's underlying claims are substantial, as the health and safety of the confidential informant hangs in the balance."  This is completely without a factual basis.  There is not, nor has there ever been, any evidence to support this proposition.  In fact, there are numerous reasons to affirmatively reject this baseless contention, many of which Dr. Coomer laid out for the Court in both his Reply in Support of the Recommendations,[140] and in his Reply in Support of his Motion to Show Cause.[141]  Oltmann did not, and cannot, meaningfully refute any of those numerous bases.

## V.     There Was No Plain Error.

Oltmann's final argument is that the firm waiver rule should not apply because the Court committed plain error by not holding a second hearing, which Oltmann did not request.  This argument should be rejected for the reasons discussed above.

---

[140] App. Vol. 4 at 10-14.

[141] App. Vol. 5 at 15.

## CONCLUSION

Oltmann requests an order affirming that a privilege that he never asserted, and that Dr. Coomer, therefore, never had an opportunity or obligation to challenge, should exempt him from providing court ordered testimony in this case. At no point does Oltmann ever argue how or why that privilege should apply, or why the exceptions to that privilege do not preclude its application. In the alternative, Oltmann requests that this question be remanded to the district court for a second hearing, which is notably the Show Cause hearing that was already scheduled and which Oltmann filed this appeal to avoid.

This Court can end Oltmann's years of abuse of the judicial system and the rule of law. It also can spare multiple future courts from addressing this exact same issue. For example, Dr. Coomer has just issued another subpoena to Oltmann in related proceeding *Coomer v. Byrne et. al.*, and he will soon have to subpoena Oltmann in his case against Corporon and Salem Media of Colorado. Oltmann will also be subpoenaed to testify at trial in related proceedings *Coomer v. Lindell et. al.* and at trial in this case as well. One or more of those related matters are likely to end up back in this Court when Oltmann inevitably pursues the same bad faith tactics in those proceedings. This charade ran its course years ago and should end.

Dr. Coomer requests an expedited Order affirming the district court's Contempt Order, dismissing this frivolous appeal with prejudice, and awarding sanctions against Oltmann and his counsel, as discussed in greater detail in Dr. Coomer's Motion for Sanctions, filed simultaneously herewith.

Respectfully submitted this 4th day of February 2025.

*/s/ Charles J. Cain*
Charles J. Cain
Bradley A. Kloewer
**COUNSEL FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE WITH F.R.C.P. 32(g)

Pursuant to Federal Rule of Civil Procedure 32(g)(1):

(1)     this document contains 8,595 words pursuant to Federal Rule of Civil Procedure 32(a)(7)(i); and

(2)     this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Mac, Version 16.93, Times New Roman 13 pt pursuant to Federal Rule of Civil Procedure 32(a)(5)(A) and Tenth Circuit Rule 32(A).

Date:  February 4, 2025            */s/ Charles J. Cain*
Charles J. Cain

## CERTIFICATE OF COMPLIANCE

I hereby certify that with respect to the foregoing:

(1)     Pursuant to Tenth Circuit Rule 25.5, all required privacy redactions have been made;

(2)     Pursuant to Tenth Circuit Rule 31.5, that should a hard copy of Appellee's Brief be required to be submitted to the Court, it will be an exact replica of the electronically filed submission.

Date:  February 4, 2025            */s/ Charles J. Cain*
Charles J. Cain

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, a true and correct copy of the foregoing Appellee's Answer Brief was filed with the Court using the CM/ECF Filing System which will send notification of such filing to:

**COUNSEL FOR APPELLANT**
**JOSEPH OLTMMAN**
 Mark A. Sares, No. 19070
 msares@hkjp.com
 **HARRIS, KARSTAEDT, JAMISON & POWERS, P.C.**
 10333 E. Dry Creek Road, Suite 300
 Englewood, CO 80112

**COUNSEL FOR DEFENDANTS**
**MAKE YOUR LIFE EPIC LLC dba**
**THRIVETIME SHOW,**
**REOPEN AMERICA LLC dba**
**REAWAKEN AMERICA TOUR, and**
**CLAYTON THOMAS CLARK**

| | |
|---|---|
| John Roger Mann | Thomas B. Quinn |
| jmann@grsm.com | tquinn@gordonrees.com |
| Gordon Rees Scully Mansukhani | Gordon Rees Scully Mansukhani |
| 555 Seventeenth Street, Suite 3400 | 555 Seventeenth Street, Suite 3400 |
| Denver, CO 80202 | Denver, CO 80202 |

 Melissa A. Wiese
 mwiese@grsm.com
 Gordon Rees Scully Mansukhani
 555 Seventeenth Street, Suite 3400
 Denver, CO 80202

       */s/ Charles J. Cain*
      Charles J. Cain, CO No. 51020